[Civ. No. 16479.   First Dist., Div. Two.   Dec. 5, 1955.]

PAUL C. SCHIRO, Appellant, v. LAWTON D. PARKER, Respondent.

Machado & Machado for Appellant.

Rich, Fuidge & Dawson for Respondent.

DOOLING, J.—This is an appeal by plaintiff-appellant Schiro from a judgment of the superior court that he take nothing by reason of his complaint against defendant-respondent Parker. Appellant did recover the sum of $6,000 with 7 per cent interest per annum from June 1, 1951, from Parker's codefendant Kallam. Kallam originally appealed from this judgment but upon his request the appeal as to him has been dismissed.

All the parties involved in this action are licensed real estate brokers. Appellant Schiro brought this action seeking to recover a commission allegedly due him as a result of the sale of property known as the Cheim Ranch located near Marysville to one Boccardo. Neither the seller nor the purchaser is a party to this action.

In November of 1950, Mr. Cheim discussed the selling of his property with respondent Parker. At that time he gave respondent Parker an oral listing to sell the property for $366,000. Parker proceeded to show this property to prospective purchasers.

Appellant Schiro heard that the property was for sale. He inspected the property and a few days later he returned to Marysville in order to see Mr. Cheim, the owner. At that time appellant Schiro told Cheim that he had a party

whom he thought he could interest in the property. Cheim replied that the listing was with respondent Parker and that appellant would have to see him. Appellant did see respondent Parker and discussed the possibility of working on the sale of the property with him. Respondent stated at that time that appellant could work with him on the sale. Sometime later, respondent Parker and appellant Schiro were in contact with Cheim and an authorization to sell the property was obtained from him. Respondent Parker testified that this authorization was given to him and that it gave him power to act on behalf of Cheim for himself (respondent) and for any other broker with whom he would wish to co-operate.

After respondent Parker had secured the written authorization to sell the property, he and appellant Schiro discussed the commission split in the event of such a sale by appellant Schiro. Respondent testified that he told appellant that he, respondent, would give appellant 60 per cent of the commission providing appellant sold the property. Respondent then wrote a note to appellant to confirm this understanding to the effect:

"Dear Mr. Schiro:

It is understood as per our verbal agreement that should your office procure a purchaser for the Cheim's property, you are to receive 60% of the commission collected on sale of same."

He testified that in using the term "procure a purchaser" in the note he meant "sell" the property as he had expressed in his oral understanding with appellant.

Mr. Boccardo, the purchaser, testified that he noted an advertisement placed in one of the San Jose papers by appellant Schiro relative to this property and that he called appellant about it. He discussed the property with appellant and authorized him to offer $300,000 for it giving him a deposit of $10,000 on this offer. Boccardo made this first offer on February 7, 1951. This $300,000 offer was refused by the seller and Boccardo verbally increased his offer to $320,000 through appellant Schiro. This offer was also refused. Boccardo at that time stated that this was his limit, and appellant told respondent that Boccardo would pay $320,000 "and that this was his top." Thereafter appellant was informed that Cheim would sell for $330,000 or $335,000. He conveyed this information to Boccardo but could not

get a better offer from him. Appellant did not communicate further with respondent.

Boccardo further testified that after the above negotiations Kallam, a real estate broker with whom he had had previous dealings, came into his office. This was a matter of weeks or months after Boccardo had dealt with appellant relative to this property. At this time Boccardo stated that as far as he was concerned the deal on the Cheim property was off. Kallam described the Cheim property stating that he thought Boccardo might be interested in it. Boccardo stated that he had been introduced to this property through appellant Schiro but that the deal hadn't been consummated. Boccardo testified that he told Kallam he would deal with him on this matter "provided that Mr. Schiro was protected." It was his testimony that Kallam assured him that appellant "would be taken care of" and with this assurance he proceeded to deal with Kallam. The trial court interpreted this as a promise by Kallam to pay appellant Schiro a reasonable proportion of the commission which he himself might receive out of the transaction. The court found that appellant's reasonable share of the $8,250 received by Kallam was $6,000 and gave appellant judgment for this amount against Kallam. With the correctness of that judgment we are not here concerned. On April 23, 1951, Boccardo made a written offer of $320,000 through Kallam for the property. This was not accepted. On April 25, 1951, he made another written offer through Kallam at a price of $330,000 which was accepted by the seller.

After it was apparent that Kallam would be able to effect a sale of this property to Boccardo, respondent Parker made the suggestion that appellant "was entitled to something for what he had done." Respondent Parker and Kallam put $1,000 each into escrow to be paid appellant. However, when appellant wrote the escrow company demanding that 60 per cent of the commission be paid to him both respondent and Kallam revoked their orders for the payment of the sum deposited to appellant. Respondent and Kallam split the $16,500 commission on the sale of the property evenly, $8,250 each.

The trial court found "that plaintiff did not himself procure a purchaser to Lawton D. Parker or to H. J. Cheim and Lea M. Cheim, his wife, ready, able and willing to buy said property upon terms acceptable to the sellers being prevented from doing so by the intrusion of defendant Kallam into the transaction."

This finding is supported by the evidence. The best offer which appellant produced was $320,000 which the seller refused to accept. Appellant not only told respondent that this offer of $320,000 was Boccardo's top, but after learning that the seller would accept $330,000 or $335,000 he did not communicate to respondent Boccardo's reaction, if any, to these figures. As a matter of fact Boccardo refused to give appellant a better offer. When Kallam brought the same property to Boccardo's attention Boccardo said that as far as he was concerned the deal was off. It was through Kallam's efforts, not appellant's, that the acceptable offer was finally made.

The court said in *Nelson* v. *Mayer*, 122 Cal.App.2d 438, 445 [265 P.2d 52], where the contract was to pay a commission "if you can effect a sale":

"In order for plaintiff to recover, the evidence must show that Nelson's efforts were the procuring cause of the sale and not merely one in a chain of causes. (Citation.) As was said in *Sessions* v. *Pacific Imp. Co.*, 57 Cal.App. 1, 17 [206 P. 653]:

" 'To constitute himself the *causa causans*, the predominating effective cause, it is not enough that the broker contributes indirectly or incidentally to the sale by imparting information which tends to arouse interest. He must set in motion a chain of events, which, without break in their continuity cause the buyer and seller to come to terms as the proximate result of his peculiar activities.' "

The court then quoted at page 446 from *Cone* v. *Keil*, 18 Cal.App. 675 [124 P. 548], a case in which the contract called for the payment of a commission "in the event of procuring a purchaser":

"Merely putting a prospective purchaser on the track of property which is on the market will not suffice to entitle the broker to the commission contracted for, and even though a broker opens negotiations for the sale of the property, he will not be entitled to a commission if he finally fails in his effort, without fault or interference of the owner, to induce a prospective purchaser to buy or make an offer to buy, notwithstanding that the owner may subsequently, either personally or through the instrumentality of other brokers, sell the same property to the same individual, at the price and upon the terms which the property was originally offered for sale."

Since respondent did not give appellant an exclusive agency the court could reasonably conclude that after receiving an offer of $320,000 which appellant said was Boccardo's top, and when appellant failed to communicate with respondent for several weeks after being informed that the seller would take $330,000 or $335,000, respondent was free to believe that appellant was unable to procure an acceptable offer from Boccardo. Indeed both Boccardo's and appellant's testimony show that this was the fact. Under the authorities above cited respondent was then free to deal with Kallam, who did produce a higher and acceptable offer from Boccardo.

The fact that respondent suggested that appellant should get some compensation for his efforts does not compel a contrary finding. The court was entitled to conclude that this was an act of grace and not of obligation.

Appellant cites cases dealing with agreements for compensation between brokers. They are not in point since in none of them were the facts comparable. In none of them did the plaintiff transmit an unacceptable offer which he stated was the highest that his prospect would make and thereafter fail for a considerable period to communicate with the employing broker after being given a figure which the seller was willing to accept.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.